**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 21, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-50576-CAG |
| | § | |
| RAUL D. MORALES AND | § | CHAPTER 13 |
| SUSANNA M. MORALES, | § | |
| | § | |
| Debtors. | § | |

**ORDER DENYING DEBTORS' OBJECTION TO CREDITOR
OVATION SERVICES' PROOF OF CLAIM**

Came on for consideration the Debtors' Objection to Creditor Ovation Services' Proof of Claim filed August 18, 2014 (the "Objection") (ECF No. 28). Creditor Ovation Services ("Ovation") filed a Response in opposition to the Objection on September 18, 2014 (the "Response") (ECF No. 32). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims). Venue is proper under 28 U.S.C. §§ 1408(1) and 1409(a). The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

1

For the reasons stated in this Order, the Court is of the opinion that Debtors' Objection should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a Chapter 13 petition for relief on March 3, 2014 (ECF No. 1). On their Schedule A, Debtors listed their homestead and an adjacent commercial lot located at 7055 North State Highway in Guadalupe County, Texas (ECF No. 9). Debtors provided a notation on Schedule A regarding the commercial lot that stated "1/7th undivided interest in commercial lot, … .". Debtor Susanna Morales ("Mrs. Morales") had inherited by intestate succession a 1/7th undivided interest in the commercial lot with her other six siblings when her parents died in 2004. Debtors listed Mrs. Morales's 1/7th interest as exempt under 11 U.S.C. § 522(d)(5) (West 2010). On their Schedule H, Debtors listed the six siblings as co-debtors as to any liabilities asserted against the commercial lot.

Debtors filed their Chapter 13 plan on March 17, 2014 (ECF No. 10). The plan provided that Ovation would be partially secured to the value of Mrs. Morales's 1/7th interest in the commercial lot. The remaining balance would be treated as an unsecured priority claim pursuant to 11 U.S.C. § 507(a)(8)(B).[1]

Ovation filed its proof of claim on April 1, 2014 (Claim No. 3-1). The proof of claim recites a balance due of $28,602.99. The basis for the claim is a "deed of trust – tax claim" that further reflects a secured claim of $28,602.99. Nonetheless, Ovation indicates on its proof of claim that the value of the commercial lot – that is, the basis of its security interest – is $12,393.72. It is unclear why Ovation used this amount as the basis for the value of the commercial lot. There are three attachments to Ovation's proof of claim: (1) Exhibit "A" is a

---

[1] Mrs. Morales had executed a note and deed of trust to Ovation for payment of delinquent ad valorem taxes for tax years 2003-2009 and 2011 on the commercial lot.

2

Promissory Note Secured by Tax Lien Contract; (2) Exhibit "B" is a Corrective Tax Lien Contract; and (3) Exhibit "C" is an affidavit authorizing the transfer of the tax lien from Guadalupe County, Texas to Sombrero Capital, LLC that is signed by Mrs. Morales as property owner. Susanna Morales signed the Deed of Trust and Tax Lien Contract as "borrower." Ovation is the servicer for Sombrero Capital, LLC.

Contemporaneously with the filing of its proof of claim, Ovation also filed its Objection to the Debtors' Chapter 13 plan (ECF No. 13). Ovation objected to the interest rate being provided for in the plan on its secured claim, which was less than the contract rate stated in the tax lien contract. Debtors conceded that 11 U.S.C. § 511 (West 2005), requires that a note executed in payment of an outstanding tax debt must be paid at the contract rate of interest stated on the note. Also, Ovation objected to its claim being treated as partially secured and to Debtors' failure to propose a cure to the pre-petition arrears on the Sombrero note.[2] Ovation withdrew its Objection to Debtors' plan based upon Debtors' counsel's representations that he would cure the arrears on the note payments by making payments through the plan and pay the post-petition note payments to Ovation directly.[3] Debtors' counsel was to file an amended plan reflecting this treatment.

<b>PARTIES' CONTENTIONS</b>

Debtors filed their Objection to Ovation's proof of claim on August 18, 2014 (ECF No. 28). Debtors argue that Ovation does not have a valid lien on the entire commercial lot located at 7055 North State Highway, Guadalupe County, Texas and that Ovation's security interest in the property is limited to Mrs. Morales's $1/7^{th}$ undivided interest in the property. Further,

---

[2] The Chapter 13 Trustee made a similar Objection to confirmation of Debtors' Chapter 13 plan regarding the plan treatment of Ovation's claim (ECF No. 22).
[3] *See* ***In re Heinzle***, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014) (direct payments to a creditor are payments made pursuant to the plan).

Debtors argue that Mrs. Morales, in executing the promissory note and tax lien contract, could not encumber her siblings' $6/7^{th}$ undivided interests in the property. As such, based upon the Guadalupe County Appraisal District's valuation of the property as $81,295.00, Mrs. Morales's $1/7^{th}$ interest in the commercial property equals a value of $11,613.57.

Ovation filed its Response on September 19, 2014 (ECF No. 32). Ovation asserts that, under the Texas Tax Code, when Mrs. Morales signed the promissory note, deed of trust, and tax lien contract, she encumbered the entire commercial lot with the tax lien and deed of trust. Moreover, Ovation maintains that Mrs. Morales had the requisite authority on behalf of all of the undivided interests in the commercial lot to encumber the entire property on her own.

## DISCUSSION

A.  **Burden of Proof**[4]

Pursuant to 11 U.S.C. § 501, a creditor or indenture trustee may file a proof of claim, and if a creditor does not file a claim, other persons may file it, including an entity that is liable to the creditor, a debtor, or a trustee. 11 U.S.C. §§ 501(a)-(c). Section 502(a)[5] provides that a proof of claim, once filed, is deemed allowed unless an objection is made. Section 502(b) provides a list of reasons to deny a claim. Thus, "[t]he substantive basis for the allowance of a claim is governed by §§ 501 and 502 of the Bankruptcy Code. The procedure for obtaining a determination of whether a filed proof of claim may be allowed to share in the distribution of the bankruptcy estate is governed Bankruptcy Rule 3001, among others." ***In re Leverett***, 378 B.R. 793, 798 n. 2 (Bankr. E.D. Tex. 2007). "'The purpose of the rules regarding claims is to require creditors to provide sufficient information so that a debtor may identify the creditor and match the creditor and the amount of the claim with the claims scheduled by the debtor.'" ***Id.*** at 800

---

[4] The burden of proof discussion is taken directly from this Court's opinion in ***In re Reyna***, No. 08-10049-CAG, 2008 WL 2961973 (Bankr. W.D. Tex. July 28, 2008).
[5] Unless specifically noted, all section references are to Title 11, U.S.C. § *et seq.*

4

(quoting *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004)).

A "proof of claim" is "a written statement setting forth a creditor's claim" and must "conform substantially to the appropriate Official Form." *Id.* (quoting Fed. R. Bankr. P. 3001(a)). "Except in Chapter 11 cases, in which certain scheduled claims are "deemed filed," a creditor desiring to receive distributions in a bankruptcy case must file a timely proof of claim." *Id.* (citing 11 U.S.C. § 501(a); Fed. R. Bankr. P. 3002(a)). "If the proof of claim is timely filed with the court and is in the form of Official Form 10, or a form that substantially conforms to Official Form 10, the basic requirements for a proof of claim under Bankruptcy Rule 3001 will be satisfied." *In re White*, No. 06–50247–RLJ13, 2008 WL 269897, at *3 (Bankr. N.D. Tex. Jan. 29, 2008); *In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005).

Bankruptcy Rule 3007 requires an objection to the allowance of a claim to be in writing and filed. For claims based upon a writing, Bankruptcy Rule 3002 requires the original writing or a duplicate to be filed with the claim. Bankruptcy Rule 3001(f) provides that "a proof of claim filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

During the claims allowance process, the burden of proof shifts between the parties. By granting prima facie validity to claims that are correctly filed, Bankruptcy Rule 3001(f) places the initial burden of establishing the claim on the claimant. "The claimant satisfies this burden by complying with Bankruptcy Rule 3001 and Official Form 10, which together govern the form, content and required attachments for proofs of claim." *In re Leverett*, 378 B.R. at 799 (citing Fed. R. Bankr. P. 3001(a)). Conversely, when a proof of claim fails to comply with the requirements of Rule 3001(c), the claim will not be considered prima facie valid as to the claim or amount. *In re White*, 2008 WL 269897, at *3; *In re Tran*, 369 B.R. 312, 317 (S.D. Tex.

5

2007), *aff'g* 351 B.R. 440, 445 (Bankr. S.D. Tex. 2006); **In re Armstrong**, 320 B.R. at 104-05; **In re Leverett**, 378 B.R. at 802. A debtor must present evidence to overcome the prima facie validity of the claim but if no such validity exists, the debtor need only object to the claim pursuant to the applicable rules, or statute. **In re Tran**, 369 B.R. at 317-18 (citing **McGee v. O'Connor**, 153 F.3d 258, 260-61 (5th Cir. 1998)). "After a valid objection, the creditor is charged with the burden of proving the validity of his claim." **In re Tran**, 369 B.R. at 318 (citing **McGee**, 153 F.3d at 260-61). "Under Fifth Circuit case law, if a debtor successfully objects to a proof of claim, the burden shifts to the creditor to prove the underlying validity of its claim." *Id.* (citing **McGee**, 153 F.3d at 260-61). As the Supreme Court has stated, "'One who asserts a claim is entitled to the burden of proof that normally comes with it.'" *Id.* at 318 (quoting **Raleigh v. Illinois Dep't of Revenue**, 530 U.S. 15, 20 (2000)).

Courts have summarized this burden shifting pattern as:

> If a claim is granted prima facie validity, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents, or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

**In re Armstrong**, 320 B.R. at 104 (quoting **In re Rally Partners, LP**, 306 B.R. 165, 168-69 (Bankr. E.D. Tex. 2003) (citations omitted)).

### B. Liability Under the Texas Tax Code

Ad valorem property taxes in Texas have first lien priority on real property. Texas Tax Code § 32.05 provides in relevant part:

6

> a) A tax lien on real property takes priority over a homestead interest in the property.
> (b) Except as provided by Subsection (c)(1), a tax lien provided by this chapter takes priority over:
>> (1) the claim of any creditor of a person whose property is encumbered by the lien;
>> (2) the claim of any holder of a lien on property encumbered by the tax lien, including any lien held by a property owners' association, homeowners' association, condominium unit owners' association, or council of owners of a condominium regime under a restrictive covenant, condominium declaration, master deed, or other similar instrument that secures regular or special maintenance assessments, fees, dues, interest, fines, costs, attorney's fees, or other monetary charges against the property; and
>> (3) any right of remainder, right or possibility of reverter, or other future interest in, or encumbrance against, the property, whether vested or contingent.

Tex. Tax Code Ann. § 32.05 (West 2005).

Additionally, the person in whose name a property is required to be listed is personally liable for the taxes imposed on the property. Tex. Tax Code Ann. § 32.07(b) (West 2005). Any property owner, or combination of property owners, may borrow funds from a lender to pay off delinquent property taxes. *See* Tex. Tax Code § 32.065(a) (West 2013) ("Section 32.06 does not abridge the right of a property owner to enter into a contract for the payment of taxes."). There are two questions that the Court must decide: (1) did Ovation's proof of claim limit the value of its secured claim by making a notation on the claim that value of the property securing Ovation's debt was less than the full amount of its debt; and (2) what is the extent of Ovation's security interest in 7055 North State Highway, Guadalupe County, Texas?

### C. What is the Binding Effect of Ovation's Statement of Value of the Collateral contained in Ovation's Proof of Claim?

Ovation indicates on its proof of claim that the amount of its claim is $28,602.99 and that it is a fully secured claim. Nonetheless, Ovation also lists the value of the property securing its

claim as $12,393.72. Debtors argue that this admission as to the value of the property is binding on Ovation. The Court disagrees.

Rule 3001(f) states that a proof of claim which is properly executed and filed is prima facie evidence of the validity and amount of the creditor's claim. Fed. R. Bankr. P. 3001(f); *see also* ***In re Hudson***, 260 B.R. 421, 430 (Bankr. W.D. Mich. 2001) (secured proof of claim is not a determination of the value of a secured creditor's claim). Further, neither the Bankruptcy Code nor the Rules give any evidentiary effect to a secured creditor's asserted value of the collateral. ***In re Hudson***, 260 B.R. at 431. Rather, all that a secured creditor can expect is that a lawfully filed proof of claim – absent objection – only establishes the amount and validity of the claim. ***Id.*** The extent of the secured status of the claim is determined under § 506(a) and may require more than the mere filing of a secured proof of claim. ***Id.*** As such, the Court finds that Ovation's assertion of value of the collateral is not binding on a determination of the extent of its secured interest.

In this case, Ovation did not contest that the tax appraisal value of the property is $81,295.00, which is considerably more that the amount of its secured claim of $28,602.99. Further, § 32.05 of the Texas Tax Code provides that a tax lien has priority over all liens against property, even purchase money security interests. Therefore, to the extent that Ovation may assert its tax lien against the entire property, Ovation is fully secured.

Debtors also alleged a filing deficiency as to Ovation's lien. Debtors assert that because the property description of 7055 North State Highway, Guadalupe County, Texas, contained on the original tax lien contract was incorrect (it listed the acreage of the property as .23 acres as opposed to the correct amount of .9440 acres) and was subsequently corrected on July 5, 2012, that this correction renders the tax lien invalid. The Court cannot discern any reason why the

8

corrective tax lien contract that was filed on July 5, 2012, which Mrs. Morales acknowledged and executed on the same date, is somehow invalidated by the bankruptcy filing on March 3, 2014. Therefore, the Court finds this argument unavailing.

### D. What is the Extent of Ovation's Security Interest?

The remaining question the Court must resolve is whether Mrs. Morales's undivided $1/7^{th}$ interest in the commercial lot is the furthest extent to which Ovation's security interest attaches. Although both parties argued whether or not Mrs. Morales could encumber the remaining $6/7^{th}$ undivided interests of her other siblings, the Court finds that is not the determinative question. Rather, the Court finds that the issue is determined by whether Ovation's deed of trust and transfer of tax lien was subrogated to the ad valorem tax lien of Guadalupe County.

In *Benchmark Bank v. Crowder*, 919 S.W.2d 657 (Tex. 1996), the Texas Supreme Court had to consider whether a third party lender, who provided financing to a homeowner to pay off a federal tax lien on his homestead, was subrogated to the rights and interests of the federal tax lien. Benchmark Bank granted financing to Crowder in exchange for a deed of trust and promissory note on Crowder's homestead so that Crowder could pay off a federal tax lien on the property. *Id.* at 659. The Crowders paid off the IRS's tax lien and the Crowders subsequently defaulted on the Benchmark note. The bank sought to foreclose on the property. *Id.*

The Crowders sued the bank alleging, *inter alia*, that the Bank's lien on their homestead was invalid because it violated the Texas Constitution provision against the forced sale of a homestead because the bank's lien did not meet the constitutionally allowed encumbrances on Texas homesteads. *Id*. at 919; Tex. Const. art. XVI, § 50.[6] The Crowders acknowledged that the federal tax lien against their homestead was valid, but not Benchmark Bank's lien and deed of

---

[6] ***Benchmark Bank*** predates the Texas constitutional amendment providing for refinance of a homestead, including a federal tax lien. *Crowder*, 919 S.W.2d at 680.

9

trust that they gave in exchange for the promissory note and loan proceeds from the note that paid off the tax lien. *Id.*

The Texas Supreme Court began its analysis by noting its previous holding that a third party who refinances a debt secured by a valid mechanic's lien against a homestead may be subrogated to the mechanic's lien. *Crowder*, 919 S.W.2d at 661 (citing ***Farm & Home Sav. & Loan Ass'n v. Martin***, 88 S.W.2d 459, 469-70 (Tex. 1935)). The Texas Supreme Court then found no difference between the refinancing of debt secured by a mechanic's lien and the refinancing of debt secured by a federal tax lien. *Crowder*, 919 S.W.2d at 661. The court then made the following determination about applying the doctrine of subrogation to Benchmark Bank's lien:

> The Bank was both equitably and contractually subrogated to the federal government's tax liens. The Bank obtained contractual subrogation through the deed of trust issued by the Crowders in favor of the Bank. The deed of trust did not create a new lien against the Crowders' property. Rather, the deed of trust preserved and extended the existing tax lien, but also prescribed new terms and conditions for foreclosure. ***Providence Institution for Sav. v. Sims***, 441 S.W.2d 516, 520 (Tex. 1969); ***Continental State Bank of Big Sandy v. Pepper***, 130 Tex. 71, 106 S.W.2d 654, 658–59 (1937). One of the new terms agreed to by the Crowders in the deed of trust to the Bank was the power of sale. Foreclosure in accordance with the terms of the Bank's deed of trust was valid. *See **W.C. Belcher Land Mortgage Co. v. Taylor***, 212 S.W. 647, 650 (Tex. Comm'n App. 1919, judgm't adopted) (Foreclosure against homestead under power of sale in deed of trust on debt originally secured by lien without power of sale was valid as the new deed of trust did not create a new debt or lien but continued the original debt and lien securing that debt and provided new terms for foreclosure).

*Crowder*, 919 S.W.2d at 662.

Eleven years later, the Texas Supreme Court considered whether a lien arising from a home equity loan that violated the Texas Constitution's prohibition against property designated for agricultural purposes could still be subrogated to the prior lien, notwithstanding that the

10

granting of the lien violated the Texas Constitution. ***LaSalle Bank Nat'l Ass'n v. White***, 246 S.W.3d 616 (Tex. 2007) (per curiam). In ***LaSalle***, the court stated:

> Texas has long recognized a lienholder's common law right to equitable subrogation. *See Benchmark Bank v. Crowder,* 919 S.W.2d 657, 661 (Tex.1996); *Faires v. Cockrill,* 88 Tex. 428, 31 S.W. 190, 194 (1895); *Oury v. Saunders,* 77 Tex. 278, 13 S.W. 1030, 1031 (1890). The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor. *First Nat'l Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex.1993) (citing *Faires,* 31 S.W. at 194). The doctrine of equitable subrogation has been repeatedly applied to preserve lien rights on homestead property. *See, e.g., Benchmark,* 919 S.W.2d at 661; *Farm & Home Sav. & Loan Ass'n v. Martin,* 126 Tex. 417, 88 S.W.2d 459, 469–70 (1935). If applied in this case, LaSalle's payment of the balance of the purchase-money mortgage and the accrued taxes on White's property would entitle it to assume those lienholders' security interests in the homestead. White contends, though, and the court of appeals held, that article XVI, section 50(e) of the Texas Constitution abrogates all equitable subrogation rights, including those that arise from payment of constitutionally valid debts. 217 S.W.3d at 578–79. We disagree.

*LaSalle*, 246 S.W.3d at 618-19.

The court then made the following observation in support of its holding:

> Throughout our jurisprudence, we have stressed that the doctrine of equitable subrogation works to protect homestead property. Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens. The ability to refinance provides homeowners the flexibility to rearrange debt and avoid foreclosure. *Benchmark,* 919 S.W.2d at 661; *Machicek*, 170 S.W.2d at 717.

*LaSalle*, 246 S.W.3d at 620.

The Fifth Circuit has similarly followed Texas law regarding the doctrine of contractual and equitable subrogation. In ***Vogel v. Veneman***, 276 F.3d 729, 734 (5th Cir. 2002), the Fifth Circuit had to determine whether a "pretended sale" violated a deed of trust in favor of the Farm Service Agency ("FSA"). The Vogels asserted that their transfer of their homestead property to a corporation that subsequently served as collateral for a loan with FSA was a sham. ***Vogel***, 276 F.3d at 734. As such, the Vogels asserted that, because the transfer of their homestead property

11

to their corporation was a sham transaction, the FSA's lien on their homestead was void because the lien did not fall under the constitutionally-allowed encumbrances on homestead property. *Id*. The Fifth Circuit noted that Texas courts have routinely upheld the doctrine of both contractual and equitable subrogation, even in cases where subsequent liens were executed with fraudulent misrepresentations by the homeowners. *Id.* at 735 (citation omitted). The court then stated that equitable subrogation occurs whenever a subsequent lender pays off an existing debt. *Id*. "Contractual subrogation arises when 'a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an *agreement* that such person shall stand in the place of the original holder of the indebtedness.'" *Id*. (citation omitted). The court reasoned that a valid deed of trust executed by both the borrower and lender establishes contractual subrogation. *Id*. (citing **Benchmark Bank**, 919 S.W.2d at 662). Therefore, "when a party is contractually subrogated to another lender, the terms of the original contract govern." *Id*.[7]

In this case, Sombrero properly perfected its lien interest. In doing so, it took the lien position of Guadalupe County, including all rights and remedies afforded the taxing authority. Therefore, Sombrero also took a security interest as to the entire commercial lot located at 7055 North State Highway in Guadalupe County, Texas.

### CONCLUSION

**IT IS ORDERED** that Debtors' Objection to Ovation Services' Proof of Claim is **DENIED**. All other relief is also **DENIED**.

###

---

[7] Texas Tax Code Ann. § 32.065(c) recognizes that the transferee of a tax lien is subrogated to the rights and remedies by the transferring taxing unit.